Alright, good morning. Welcome to the Fourth Circuit. Delaney, we have more lawyers on the screen than we need. Yes, sir. Yes, if we can have just counsel for the first case, please keep your videos on. If everyone else can go ahead and mute those until your turn, that would be greatly appreciated. Thank you all. Alright, so our first case is Vapor Technology Associates v. Wooten, et al. Mr. Fraser, we'll be glad to hear from you. Yes, your honor, and can you hear me? Yes, sir. Thank you. May it please the court. The district court below erred as a matter of law in concluding that 21 U.S.C. 387-P, which is the FDCA's preservation savings clause for tobacco products, limits the scope of 21 U.S.C. 337-A, which says that only the federal government can enforce the FDCA. And I'd like to make three points in support of that argument today. The first is that the district court misunderstood the purpose of preemption and savings clauses in general. Second, that the district court incorrectly determined that Congress intended to limit the scope of 337-A when it passed 387-P. And then third, the court incorrectly determined that plaintiff's interpretation of 337-A would render the preservation and savings clauses a nullity. Well, I'll tell you what, to get started, why don't you talk to us a little bit about standing? Because there seems to be some debate about that nationwide in these cases, and obviously there has to be standing, or if there's not, then there's not much else for us to do. So why don't you talk about that from your perspective for a minute? Sure, Your Honor. And you correctly mentioned that there's been a lot of these cases in different courts and standing has come up. Obviously, we agree with the district court's determination that our clients do have standing. In these cases, the issue really comes down to the injury requirement. But our position is the injury requirement is obviously part of Article III standing, and the purpose of Article III is to limit the court's jurisdiction to cases and controversies. And if you look at the Supreme Court's most recent statement on this, I believe, which is in the FDA versus Hippocratic Alliance or Alliance for Hippocratic Medicine, the abortion bill case from a couple of years ago, a unanimous opinion by Justice Kavanaugh saying the purpose of that injury requirement is to make sure that the courts are not issuing advisory opinions. In other words, they're not having parties come before the court that really don't have any skin in the game in terms of what the controversy at issue is. Counsel, to kind of talk about that a little bit, is it correct that there's no dispute here that the plaintiffs are not in compliance with the federal premarket approval requirement? That is correct, Your Honor. That is correct. So a lot of the discussion of legally protected interests, I think appropriately questions whether that conflates standing with the merits, potentially, and I understand that and can see how in some cases that's happened. But imagine this situation. Imagine we have federal drug laws and we have state drug laws that are essentially the same as the federal drug laws. And a particular administration doesn't view enforcement of those drug laws as a priority, but the state does. Would someone who's in the business of selling drugs and making money for it be able to say they have an injury in fact? I'm trying to understand, making sure I understand my hypothetical. So I think if any plaintiff that is arguing that a state is violating the supremacy clause of the Constitution, in other words, trying to do something that federal law doesn't allow the state to do, I do believe that a plaintiff there would have an injury. I think it's a stronger case here because we actually have 337A in the Food, Drug, and Cosmetic Act where Congress is really specifically saying the state, anybody else other than the federal government, needs to stay out of this. I think I just want to make sure I understand your answer. I mean, certainly 337 creates, helps you on the preemption argument. But the first thing is whether you have an injury in fact when your clients are not in compliance with federal law. And it would seem to me, if that's your position, you would, in my hypothetical, you would have to say the drug dealer has standing. I think the drug dealer might have standing, Your Honor. I look at this and I think the opinions from the Iowa District Court and from the Virginia District Court, which is more recent, and looking at this, and it's complicated, obviously, but the test I think that the states are arguing for here at the end of the day really just allows states to escape implied preemption arguments anytime because at the end of the day, the states could always just fall back on, well, yes, we're trying to enforce the state, the federal law, but... Could the federal government, if the federal government thought that was happening, would the federal government have any power to say, look, states, you're out of your lane? Does the federal government have any ability to do that on its own? No, Your Honor. I can speak from experience as being an attorney for the FDA. If the FDA were to face that situation, it could communicate with the states, but I don't know of a court action where I don't know what kind of claim that would be in front of a court to stop it for an injunction or something like that. Okay. Thank you. Thank you, Your Honor. The first point I wanted to make was the district court misunderstanding the purpose of preservation and savings clauses. One of the state's own cases, the R.J. Reynolds v. City of Adena case, which is the... Counsel, you're done with the standing part, and now you're into the merits of your preemption. Yes, yes, unless there are other questions about standing. All right. Well, and just to make sure I'm making my point clear, is that I think that the issue here comes down to the disagreement is when, what is the definition of injury when you are talking about whether there is Article III standing? And, you know, as laid out in our brief, our position is that injury just, that requirement is that there is an actual injury to the plaintiff. The plaintiff is suffering some sort of harm as opposed to a plaintiff who is just a bystander, who is just upset with whatever the defendant is doing. And I think that's when the Supreme Court in the FDA v. Alliance for Hippocratic Medicine laid that out most recently. I think that's the best enunciation of what the injury requirement is. And certainly our clients here, as the district court found as a factual matter, will suffer injuries if they are prevented from continuing to sell various products that are in their inventory. So why don't, for the rest of your argument, why don't we assume that there is standing? And now you tell us why there's preemption. Sure. So there's implied conflict preemption, and that is our argument. So the district court relied on the fact that there's a preservation and savings clause. Counsel, before you get to the district court's ruling, and I know that's important, but I just want to maybe get some ground rules or understanding. Would you agree that if 337 wasn't there, there would be no conflict preemption? Yeah, I would agree with that. This is a 337 agency. Do you agree that North Carolina could outlaw the sale of these products in its state? Yes. Do you agree that, I think this is in response to the corollary of my first question, that the combination of this preservation, preemption, savings clause, which just as an anecdote is kind of an interesting way of drafting statutes. Not a model of clarity. Yeah, a lot of words that end up with something probably pretty narrow. But nevertheless, there is not express, under just 387P, the North Carolina regulations would be permissible if that's all we were looking at. I believe we would still have an express preemption argument that this is an effort to adopt a state pre-market tobacco product application. You're saying that you're arguing for express preemption, not implied preemption? We have not made that as our primary argument, Your Honor. I think in any case where you're dealing with FDA regulated medical products, and this is seen in the context of medical devices, and we've cited in our brief, I believe it's a District of Minnesota opinion, but there are also several other courts that do this analysis. In terms of medical devices, and the medical device provision of the Food, Drug, and Cosmetic Act has an express preemption provision, which reads almost- No, Your Honor. No. Okay, so why are we talking about that? Your Honor, I was responding to one of your colleagues' questions in my view.  So I don't think the court needs to get there. I think the court can't. And to be honest, our main case is the Buckman case from the Supreme Court. And in that case, the defendant made an express preemption argument as well. The Supreme Court said, we don't even need to go there. We'll just deal with implied preemption. And I think- Do you agree that unlike Buckman, we have a presumption against preemption in this case? I do, but I don't think it makes a difference. I understand. But Buckman's whole, really first half of the opinion was about how that was not in the heartland of states' regulation of its citizens' health and welfare. Then it goes on to some issues that I know you cite and I think appropriately do help you. But just the point is, we do have a presumption against extraterritorial- I'm mixing up my case- a presumption against preemption. We do, Your Honor. But again, it's a talisman that plaintiffs like to use in preemption cases. But I think if you look at the Buckman's progeny, when courts are applying Buckman in other FDCA contexts, and it's typically a state common law tort claim, you know, this drug injured me, this medical device injured me, you still have a presumption against preemption, but courts are still applying Buckman in 337A to those cases. Yeah, the interesting thing about- I'm glad you brought that up. The interesting thing about a lot of these preemptions, and these aren't, you know, maybe- a lot of these cases involve a situation where the state is making a judgment about the federal standard, and there's a risk that the way the state interprets a standard is different than the federal government interprets the standard. That happens in a whole bunch of the cases, and it's even a part of the Geyer case, where it talks about the very existence of an implied preemption. And here we don't have that really at all. I mean, you know, whatever North Carolina is doing with the pre-market list, it's identical. There's no interpretation. It's just doing what has happened at the federal level. Does that make any difference? I don't think so, and here's why, Your Honor. What 337A is saying is that only the federal government can enforce the Food, Drug, and Cosmetic Act. It does not have sort of an exception where- well, unless the federal government has already decided that the defendant is violating the act. And if you look at the Buckman opinion itself, there was a concurring opinion by Justice Stevens, joined only by Justice Thomas, where they said the outcome would be different here if the FDA had actually decided to take action against the company that allegedly defrauded the FDA. Because then we'd have the FDA saying, yeah, there was fraud that resulted in the product being approved. But that only got two votes. And the issue there is the FDA's- And the FDA, in all sorts of product areas, decides that it's not going to enforce in certain situations because it's better to leave certain products on the market rather than take them off. And what the federal government- why it objects to plaintiffs or states getting involved in this is because that gets into the discretion that the FDA has to be able to make judgments quickly and change its enforcement priorities. So that's really the tension here. Counsel, let me ask one more question. Your time's about over, and I just wanted to ask- We're going to take a couple- This is an important case, so we're probably going to take a couple extra minutes. Okay, great. Thank you. So imagine this. Imagine the state isn't, like it is here, incorporating the existence of a company having a premarket approval order. It's not referencing the federal law or regulation as much as it does here. But a state has its own law that mirrors- not because it incorporates, but it's the same law. Its legislature has gone through a process, adopted a standard that is essentially the same as the federal standard. Maybe it did it first. But we're not talking about an incorporation. Would you say that would be preempted? It's state law, and it just either happens to be the same as federal law, or maybe they copied it. Who knows? But it's the same standard, but it's not referencing federal law. Would that be preempted? It would really depend on the precise circumstances, but I will tell you that most states have an FDCA analog. And I believe nobody's ever done it, or they haven't done it in years, but I believe like in the state of California, you can apply for a drug. You can submit a drug, I think. And if I'm wrong about this, I apologize. It's been a while since I looked at it. But you can apply for drug approval from the state of California, but nobody would do that because then you'd be limited to selling it in California as opposed to nationwide. But if a state wanted to, and it set up its own approval process, there would be, again, depending on the precise context, but that wouldn't automatically be preempted, I do not believe. Okay. But it would have the same effect, the same interference, if you will, with the ability of the federal government to either exercise its discretion or not as this regulation. So it's functionally the same. It's, you know, in terms of the actual language, it's different. I would say it's functionally the same, Your Honor, but the reason it's different, and the reason it's different here, is that the FDA is the agency tasked with using its expertise on the pre-market tobacco product application process, and when products that don't meet that standard, there may be reasons not to fully enforce that. So it is applying its own view of what Congress has done and what Congress wants the FDA to do. And I would say if a state legislature enacts something that's pretty similar, but at the end of the day it's the state legislature's intent, that would be still, I think you might be able to get around preemption in a situation like that. But, again, it would really be context specific. The FDC is very complex. Counsel, let me ask you that you've already conceded that if the state of North Carolina wanted simply to ban these vaping products, it could do it. So looking at Section 387P, A to B, it says that the preemption provision in A doesn't apply to requirements relating to sale, information reporting to the state, distribution, possession. Why wouldn't the language of that statute in and of itself take the North Carolina statute out of any preemption claim? I'm sorry, Your Honor, could you repeat which subsection?  387A to B. Okay. Yeah, Your Honor, so that's the savings clause, I guess it's called, saying that the states retain the authority to enact restrictions on the sales of products. I don't think you can read that as the states are free to then start enforcing other aspects of the Food, Drug, and Cosmetic Act. And here's what I would say about that, Your Honor. Right, but you've said that they can simply ban vape products completely. Correct. So if they can do that and they have that power and they're not independently verifying or setting out criteria that a vape manufacturer or distributor has to meet in order to comply with the federal statute, why doesn't this subsection B eliminate a preemption argument? I would say, and this gets back to, Your Honor, because you still have 387P.A.2.A. where you have the express preemption provision. And again, we're not primarily relying on express preemption. But that is saying that the FDA is the one who has the role in determining whether a product meets that PMTA standard. And we don't believe you can read the savings clause saying that the state can regulate the sales of products to mean that the state can then just, in the guise of a sales restriction, just decide that any time somebody doesn't meet a provision of the Food, Drug, and Cosmetic Act, that's a sales restriction. Because then at the end of the day, you've just rendered 337A a nullity. And I don't think this is an odd way for Congress to render 337A a nullity, especially when Congress passed 387P nine years after Buckman, nine years after other courts had started applying Buckman, saying that parties of the federal government can't enforce it. It seems like you could make the same argument that under your theory, 337A renders this 387PB section a nullity. No, and here's why. I think if you look at the context of the entire Tobacco Control Act, when Congress passed this in 2009, what was Congress trying to do with this preservation clause? The Food, Drug, and Cosmetic Act places limits on what the FDA can do in terms of sales restrictions. So 21 U.S.C. 387F parenthesis D says that the FDA may not prohibit the sale of any tobacco product in face-to-face transactions by a specific category of retail outlets. So the Tobacco Control Act is a compromise bill. Cigarettes are bad, but Congress said, well, we're not going to ban them. We're going to limit them. And the provision I just read said that the FDA cannot adopt a regulation, for example, that says you can't sell cigarettes in a convenience store because kids can go in a convenience store. But you know what? States can. Let's see if you can wrap this up in about 20 seconds. Sure. So those are provisions. The FDA can't limit the sale of tobacco products in specific retail outlets. But what 387P does is it preserves the state's rights to do that. When the original FDCA said that Congress couldn't or the FDA couldn't establish a minimum age above 18 to buy cigarettes, but the Preservation Clause allows states to do that. The FDCA says that the FDA cannot ban cigarettes, but the Preservation Clause allows that. So that is what this Preservation Clause is getting at. I think we've covered that, and we've gone way over time. So you've got some rebuttal time. So let's hear from Ms. Brennan now. Thank you. Thank you, Your Honor. I may have pleased the Court. I'm Stephanie Brennan from the North Carolina Department of Justice. I represent the North Carolina legislative leaders and the Secretary of the Department of Revenue. The district court in this case correctly found the plaintiffs were highly unlikely to succeed on their implied preemption claim for three basic reasons. First, the states have long been the primary regulators of tobacco. Against that backdrop, in 2009, Congress enacted the Tobacco Control Act, which carved out a narrow federal role in manufacturing, but expressly preserved its... You also say that they don't have standing. As we noted with opposing counsel, that's a threshold question. If you want to take a few minutes to tell us why you think they don't have standing, then we could move on to everything else. Certainly, Your Honor. And I would note that there's a good discussion of standing as well in the amicus brief that was submitted on behalf of 28 other states. But the standing argument is relatively simple, and it's simply that the plaintiffs are trying to remove a barrier to illegal activity, and they do not have standing to do so. This is not a case like the cases that they've cited where there's a conflating of the merits in the standing argument because no matter what happens in this case, that illegality is not going to get resolved. It can't be but so simple because we've got courts all over the country going both ways. It must be a little more complicated, at least to some folks. It's true that some of the courts have not gone along with the standing argument, but I think it's a valid one. It goes back to the concept in the Wright and Miller textbook that you can't try to just remove a barrier to illegal activity because you don't have injury that's recognized by the court when you're trying to engage in something that's illegal, and you also are not able to get redressed from the court. So, counsel, under your theory of standing, imagine we're in Colorado and a dispensary sells marijuana to only white people. Is there a claim there if selling marijuana is illegal under federal law? Well, I think they would not be trying to remove a barrier to their own illegal activity if they were trying to challenge that discrimination, which distinguishes this particular case. They are trying to ask this court to remove a barrier to them that would then allow them to do something that's illegal. Well, it's illegal. I guess the point you're making is that it's legal in Colorado, but it's not legal in the federal law. Implicit in that, though, is the notion. The reason I ask that is if the question is whether it's legal under federal law or not, you would have that similarity, wouldn't you? That would be similar in that way. Again, I also want to address the point that was made about not being able to challenge this. I do think the FDA might have an opportunity to try to bring a claim if they thought that there was some kind of improper thing happening in terms of the state doing something that was preempted. And in addition, this could be a defense. There could be a preemption to defense to any enforcement actions. So there are ways that it could be brought. It's just that the person who's engaged in the illegal activity doesn't have standing to bring a claim that then tries to remove that barrier to their illegal activity. That's the point of our standing argument. Counsel, you brought that last point you made about whether the federal government could do something. Is it relevant? I'm moving into preemption a little bit on this, and this is maybe not the central point. But does it matter whether the federal government takes a position or not? I mean, it's kind of interesting. We're talking about interfering with federal government. One way to look at it is just to look at the law, the statute, coldly without anything involved. But the government hasn't filed an amicus brief. It's made some comments about why it's not enforcing. It's subjected to the International Trade Commission doing anything. Has the federal government, since this act has been in place or since North Carolina has done its legislation or other states, even in the press, said this is causing us problems? And does that matter? Well, first, no, they have not done anything to that effect. And, in fact, they've suggested that what the states are doing is consistent with what they want to do because they've gone after and tried to enforce against these products, including some significant seizures of products that have happened in the last couple of years. But, secondly, I don't think it matters because what's important in a preemption argument is whether or not Congress preempted and intended to preempt the statute, not what the federal agency wants to do. And here they have not met the high standard of showing that Congress had an intent to preempt. In this case, recently the court in Gen Biopro said that there's a very high level of clarity that's required and we can't go searching for some kind of congressional intent that's not expressed. And here we have a very clear statute, 387P, that makes clear Congress's intent in 2009. It seems to me like it actually helps you that the federal government has not said anything or done anything to impede your statute because, to me, that indicates the federal government doesn't think that North Carolina is interfering with its statute, with the federal statute. So I think it helps you. I agree, Your Honor. Okay, because you said a minute ago I thought that it didn't make any difference. Well, I think certainly it defeats the argument that they try to make about somehow we conflict with federal enforcement priorities, if that's even a valid way to suggest that there's preemption. But I think the primary inquiry for the preemption analysis should be the intent of Congress, which is expressed through 387P quite clearly, that they intended to leave this authority to the states to regulate sales and only to carve out a small area for manufacturing for the federal government. And this particular statute for North Carolina squarely falls within sales. So, counsel, I don't mean to cut you off. I think you explained why you think 387P, its role in this process. And let me just assume I think if we're looking at 387P, you have a strong argument. What I want to talk about, I guess, two things, mainly 337A. In the lead-in to 387P, I don't have it right in front of you. It says something like, nothing in this subchapter shall be construed to prevent states from doing this. And then it goes on and has the preemption, and it goes on with how to have the savings. But that nothing in this subchapter doesn't include 337, because 337 is in a different subchapter. And then 337 has a section B that says, you know, there's these things. You can't states enforce federal law, but we got some exceptions to that in B. And it seems like to try to harmonize those, that's a weakness in your argument. Congress didn't put 387P or the tobacco part of this in 337B. And they didn't mention 337 at the beginning of 387P. That's a lot of statutory terms. I hope you're following me. But do you see my point? I mean, I got you 387P if we're just looking at that. But how does the structure of 337 and the beginning of 387P not, you know, work against you there? Well, I have a lot of answers on 337, but I'd like to address your second point first, if I may, which is the subsection B, the Nutrition Labeling and Education Act, which is a totally different approach that Congress took to a different product, where they actually do allow states to enforce the FDCA in particular cases having to do with food labeling. So that's just a different approach, and that I don't think is applicable here. In terms of 337A and how it gets reconciled with 387P, 337A is very narrow. And it merely says that all proceedings for the enforcement or to restrain violations of the FDCA shall be by and in the name of the United States. And that can be given full force and effect when it's read narrowly, consistent with 387P, because the state here is not enforcing the FDCA. The state, of course, could not come in and bring an action and say, we are bringing this case to enforce the FDCA under the FDCA to enact the penalties that are allowed by the FDCA. The state, of course, cannot do that. What the state can do is pass its own state law, as it has done, that is not a proceeding to enforce federal law. It's a state-level sales ban. It simply sets as one criteria for sales based on federal law. As a part of that, something that regulates sales within North Carolina. It's not attempting to go into interstate commerce and operate on the realm that the federal government does. It's simply banning these sales within North Carolina using one criteria. The Graham case from Mississippi, the Wisconsin case, have all rejected the idea that 337A applies at all here, because there's not an attempt to enforce federal law. The state, if it ever takes an action- Counsel, let me interrupt you. I'm sorry for that. I have read those district court cases, and there's some, I guess, that go the other way. I hear you there, that you maybe could read 337 as a restriction on states being essentially deputizing themselves to be the Attorney General or the head of the FDA and going out and enforcing only that federal law. Has a court viewed 337 that way outside of these recent district court cases? I don't know that it's been raised outside of these recent cases in that same way, because the important thing here is tobacco-specific, right? It's how 337A- That's not- I don't think that is the- With all due respect, I don't know that that is the important thing. We're in the tobacco context, but 337A, as you say it reads, and I understand your argument, I think the district court ruled that way, but that does seem a little bit different than the way Buckman and the other cases have viewed 337. They seem to be looking at whether you're incorporating the standards or not. So, I mean, are we- That argument, I'm just asking you, is it in tension with Buckman and- First of all- And I'm glad you asked about Buckman. Buckman is not applicable, as these other courts have also found. And the reason for that is that Buckman involved a personal injury claim by a private party in an attempt to police fraud on the FDA using state tort law. It did not involve a law that was expressly preserved and saved in a different provision of the statute, which as we have- But counsel, that is totally true. But on the point we were dealing with is the way you read 337A, doesn't the way Buckman treats 337A deal with the way more similar to what North Carolina is doing here, as opposed to reading it just to prevent many states being the deputized attorney generals? I think that the Buckman line of cases primarily doesn't get to the states being attorney generals. It's mostly dealing with claims from private parties that are trying to assert state tort law, not a state that's asserting its own law. And I think the distinction is a couple of things. One, you don't ever have to adjudicate whether there's been a violation of the FDCA, which is really the thrust of Buckman and what it was concerned about, where the state's just incorporating one aspect of federal law and, therefore, can't be in tension with it. That's never going to happen. And you also- So I think those are- The Buckman cases don't really even come into play. Setting aside some other important distinctions with Buckman, including that the medical device context is a different context in which there was much more federal preemption and stronger federal preemption, which I think was flavoring and coloring those decisions. The preemption clause there was much broader. Regal, the Supreme Court case in Regal, talks about the oversight that there was intended to be in the federal context in medical devices, which doesn't exist in the tobacco context. And so I think that's just a very- Those are very different cases that haven't been extended to the tobacco context for good reason because it's quite distinguishable. I would also point out that North Carolina doesn't initiate an enforcement action under the FDCA, nor could it, when it tries to enforce its own state law, because noncompliance with the federal act itself is not an actionable basis for them to do so. Any claim that they're ever going to bring is going to relate to and be tied to sales, as the district court noted. And so it's not an attempt to enforce the FDCA. It's an enforcement of the state statute that is a sales ban. And I think it would be odd, as I think Judge Agee noted, that they could ban entirely the sales of tobacco, these vape products, but they're not allowed, and they could also not do it at all, and anything in between, so long as they don't mention anything about the FDA or FDA approval status. And that doesn't really make sense. What Congress intended to do— Counsel, I think that's an interesting point, and it raises an issue I have, which is when we're looking at preemption, I mean, it seems like some of the cases talk about it, I would say, kind of in practical or functional terms. How much is this actually interfering? And then some of it, some courts seem to be talking about it way more sterilely, or if that's the right word, just like as a matter of law. Do we just look at the statutes and see whether the statutes themselves conflict? Does that make sense, a distinction between the effect of the law and the just literal black and white of the law? And if it does make sense, are we permitted to look at practical or functional conflicts, or is it just legal? So I think it does make sense, and I think there is some confusion and inconsistency potentially in the case law between whether you just look to what Congress did or whether you look to the effect and sort of how it interferes potentially with federal enforcement. It seems to be narrowing a bit potentially in the Kansas versus Garcia case. The Supreme Court rejected the concept of conflict preemption based on federal enforcement priorities, for example. In the GenBioPro case, this court recently narrowed, I think, the scope of preemption and made it a high standard, and you have to show high clarity and sort of pointed to, also rejected this concept of conflict with federal enforcement priorities. But I would say I think both of those factors, as Judge Thacker pointed out, favor us here. Even if you do get to the federal enforcement and look at what the federal government has done, there's nothing that would suggest that we're doing something that conflicts, and that can't be the case where we're simply incorporating an aspect of federal law. I mean, it would be far more disruptive, arguably, if we would have gone in a different direction and done something totally different than what the FDA did in terms of approval status. That's not what we've done. We've been more consistent, and that way it would be odd to invoke conflict preemption to say that somehow we've violated and are preempted by federal law in that circumstance. I just want to turn to a couple of other points. Counsel on the other side talked about that we could do anything in the guise of sales. I don't think that's correct. I think that the narrow preemption provision in 387P does have some guardrails for that, and the U.S. smokeless tobacco case addresses that and talks about that you may have to draw some lines sometimes, and it may not always be easy, but where the line is drawn is the manufacturing versus sales distinction. If we were trying to regulate and add something that's different from or in addition to what the federal government has done in those narrow categories in the preemption provision, we would not be allowed to do that. But we're here. We're entirely focused on sales. That is not the case, and we've acted fully within the scope of what we're permitted to do. I did want to point out that 28 other states, including all of the other states within this circuit, have asked that this court support North Carolina's position here. This is important. North Carolina is regulating dangerous and addictive products that have been shown to bring a lot of youth users into the market. They try to falsely market their product as safer, and they suggest that these should be allowed in order to allow adult users to have products to leave the market, but the North Carolina General Assembly was entitled to conclude that that is not the case and that the risk that we bring new users into the market far outweigh any potential benefit, particularly given that there's other products available to help people quit. I see that my time is up, Your Honor, so unless you have any other questions, we ask that this court affirm the district court's denial of the preliminary injunction. All right. We gave opposing counsel quite a bit of extra time. If you feel like there's something essential to your argument that you haven't covered, you can mention that now. Not required, but up to you. Thank you, Your Honor. I think I would just ask this court to affirm, and thank you for your time. All right. Thank you. Mr. Frazier, you've got some rebuttal time here. Thank you, Your Honor. Can you hear me? Yes, sir. Thank you. I'll just make a few points. Judge Thacker, on your question about the FDA not weighing in, I would just say from a practical matter, based on my own experience, including writing amicus briefs for the FDA, typically does not happen at the district court level. It did happen in the ITC situation that we did cite in our briefs below, but I will tell you as a practical matter, that's not uncommon in ITC cases because the ITC will actually directly contact the FDA and ask the FDA to weigh in. They didn't weigh in on this appeal, did they? No. The FDA has not weighed in on any appeals regarding these statutes.  Yeah. Just so the court is aware, North Carolina's counsel didn't bring it up, but they cited the Fifth Circuit's Xyla opinion quite heavily, and that deals with whether a state can simply, by statute, just adopt the FDA standard. That is now on cert petition to the Supreme Court. The plaintiff in that case, the plaintiff that was arguing against preemption, originally declined to file an opposition to the cert petition. The court asked for a response, and then after the court got the response from the plaintiff, the court has asked the Solicitor General to weigh in. Counsel, thank you for that on Xyla. Back to the point you mentioned earlier, you explained maybe why there's an absence of a position taken by the government here. I think when I addressed that with your colleague, I asked whether that has legal relevance. Do you have a case that says whether or not the government has expressed anything, is relevant or not? Is there anything that addresses whether we should or can consider that? I just think in general, obviously the courts have the final say on what's constitutional and statutory interpretation, and the executive branch views on that is relevant. The court can take that into account. It's no different than any other amicus. Can I ask one more question before you go to your points? I'd ask your colleague, I'm not sure how artful I did it, and it's kind of a hard thing to explain, but whether we look at preemption from the practical effect of a conflict or whether we look more from a binary standpoint, is it in conflict or not based on the letter of the law, do you have authority that says how we do that, whether we can consider the practical effect, how much of a conflict it is, things like that? I think you used the term, a sterile version of it, and I can't remember what the other one is. I would go with the sterile version. I'm sure you would. I don't blame you. I asked you, not really your view on that, but whether you have a case that helps me with that. I don't. Again, I would go back to Buchman, and I don't know if Buchman is really a sterile version, but Buchman is looking at the entirety of the Food, Drug, and Cosmetic Act and the medical device approval process and is taking into account in general how that works, taking into account that the FDA has to, and traditionally does, engage in enforcement discretion where it does not, for whatever reason, fully enforce various aspects. And this happens not just in the tobacco context. I will tell you that during the pandemic, the FDA issued tens, 20, 30 guidance documents saying, Here are our provisions. We are not enforcing because of this public health emergency. We think it's more important for products to be on the market. And I think what Buchman recognizes is that also occurs in the medical device context, and that is really where this comes down to is where I think the courts need to look at this, is that you have to look at, in this context, what the FDA does, what its role is, and the fact that you've got 337A, which gives it that enforcement discretion, and when you are intruding on that enforcement discretion, that's it. And you don't have to. There is no sort of gauge as to, well, how far are you intruding into that enforcement discretion? Because I don't think that's a workable standard when you're dealing with public health issues. Mr. Frazier, we've been very liberal with you in time today, so if you've got something else that you think is crucial to your case, you've got about 10 seconds to tell us. I do not, Your Honor. Thank you very much for the extra time. I appreciate it. All right. Well, we want to thank both counsel for their excellent arguments today, and we're going to take this under advisement and issue an opinion in due course. So ordinarily, we would come down from the bench and greet you, but obviously we can't do that with our virtual court, so hopefully you'll come back to the Fourth Circuit another time when we can. So with that, Delaney, we'll take a minute or two stretch break before we go to our next case. Thank you. All right, thank you. This honorable court will take a brief recess.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.